**Leticia SCOTT, Plaintiff–Appellant,**

v.

**WAL–MART STORES, INC., Defendant–Appellee.**

No. 01–3180.

United States Court of Appeals, Tenth Circuit.

Oct. 4, 2002.

James E. Benfer, McCullough, Wareheim & LaBunker, David O. Alegria, McCullough, Wareheim & LaBunker, Topeka, KS, for Plaintiff–Appellant.

Alan L. Rupe, S. Douglas MacKay, Dwight David Fischer, Husch & Eppenberger, Wichita, KS, for Defendant–Appellee.

Before HENRY, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and MURPHY, Circuit Judge.

**ORDER AND JUDGMENT**[*]

McWILLIAMS, Senior Circuit Judge.

Leticia Scott ("Scott"), an Asian female, was first employed by Wal–Mart Stores, Inc. ("Wal–Mart"), an Arkansas corporation, in August, 1993, in its bakery department in New Llano, Louisiana. In November, 1995, she requested a transfer to Wal–Mart's "Hyper Mart" store in Topeka, Kansas, so as to be closer to her relatives. Her request was granted. Upon her arrival in Topeka in November, 1995, she was not allowed to go to work immediately because her transfer papers had not been received. However, in December, 1995, the "paper work" on her transfer having been completed, Scott began working for Wal–Mart in its Topeka store. On June 10, 1997, Scott's employment with Wal Mart was terminated. Scott's position in the district court, and here, is that she was fired by Wal–Mart. Wal–Mart's position in the district court, and here, is that Scott voluntarily quit. That is the root of the controversy on appeal.

Based on her termination of employment with Wal–Mart, Scott brought the present action in the United States District Court for the District of Kansas. By an amended complaint, Scott in Count I, which was denominated as a "Race Discrimination Claim," alleged that she was racially harassed in the work place and ultimately discharged from her employment with Wal–Mart on June 10, 1997, on account of her race. 42 U.S.C. § 2000e, et seq. In Count II of the amended complaint, Scott set forth a claim based on the Americans with Disabilities Act, asserting that she was discriminated against and eventually discharged on June 10, 1997, because of work-related injuries, including an injury to her wrist. 42 U.S.C. § 12101. In Count III of the amended complaint, Scott alleged that in retaliation for her pursuit of her rights under the Kansas Workers' Compensation Act, Wal–Mart on

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

June 10, 1997, discharged her. Kan. Stat. Ann. § 44–1001.

Wal–Mart in due time filed an answer, and, after extensive discovery by both parties, filed a motion for summary judgment, to which Scott filed a response. After hearing, the district court in an unpublished memorandum and order consisting of some 29 pages, granted Wal–Mart's motion for summary judgment and dismissed all of Scott's claims. *Scott v. Wal–Mart Stores, Inc.*, 2001 WL 584340, 2001 U.S. Dist. LEXIS 6951 (D.Kan. May 16, 2001).

In granting Wal–Mart's motion for summary judgment, the district court stated that Scott had pled four claims for relief: (1) racial harassment in the work place; (2) unlawful discharge because of race; (3) Wal–Mart discriminated against Scott because of her physical disabilities; and (4) Wal–Mart discharged her in retaliation for sustaining injuries for which she could, and eventually did, file a claim under the Kansas Workers' Compensation Act. As concerns the claim based on racially motivated harassment, the district court concluded that, based on the evidentiary matter before it, Scott had not made a sufficient showing that any of the "described incidents were motivated by her race" nor had she shown that the perceived harassment was pervasive. As for Scott's claim of unlawful discharge because of her race, the district court concluded that, though Scott had shown that she was "qualified for her job," on the record before it, Scott had not shown that Wal–Mart discharged her on June 10, 1997 and that, on the contrary, Scott "voluntarily terminated her employment." Concerning Scott's claim based on the Americans with Disabilities Act, the district court concluded that, on the record before it, Scott had not shown that she was "disabled" within the meaning of the Act, nor had she shown that there was any "record of impairment" or that Wal–Mart

"regarded [her] as disabled." As to Scott's claim based on Wal–Mart's alleged "discharge in retaliation," the district court observed that, though "Kansas adheres to the 'employment-at-will' doctrine," there was an exception to that doctrine when an "employer terminates an employee in retaliation for an employee's exercise of her rights under the Kansas Workers' Compensation Act." In connection with the latter, the district court recognized that though Scott had not filed her claim under the Kansas Act until after June 10, 1997, the date when her employment terminated, be it by "firing" or "quitting," that the Act still applied if Wal–Mart knew that "she sustained an injury for which she might file a future claim for benefits . . . ." However, the district court concluded, as it had earlier in its memorandum and order, that Scott was not discharged by Wal–Mart but that she "voluntarily terminated her employment."

At the conclusion of its lengthy memorandum and order, the district court summarized its reasons for granting summary judgment as follows:

> The court grants summary judgment on all four of plaintiff's claims. Summary judgment is granted as to plaintiff's hostile work environment claim because she has failed to establish that defendant's conduct was severe or pervasive or that the conduct was motivated by plaintiff's race. Summary judgment is granted as to plaintiff's discriminatory discharge and worker's compensation claims because plaintiff has failed to show she was discharged as is required to establish a prima facie case. Summary judgment is also granted as to plaintiff's ADA claim because she has failed to establish that she is disabled within the meaning of the ADA as is required to establish a prima facie case.

On appeal, counsel in his "Statement of Issues" raises two matters, which he frames as follows:

I. Whether defendant discriminate [sic] and fired Ms. Scott because of her race.

II. Whether defendant retaliated against Ms. Scott because of her work injuries.

Thus, counsel's position in this court is that the district court erred in holding that Scott had not established that she was fired by Wal–Mart because of her race or that she was fired by Wal–Mart in retaliation against her because of her work-related injuries which ultimately resulted in her filing a claim against Wal–Mart under the Kansas Workers' Compensation Act. In concluding that Scott "quit," and was not "fired," the district court spoke as follows:

As to the third element, defendant argues plaintiff was not discharged, rather she voluntarily terminated her employment. The evidence before the court establishes the following scenario: (1) plaintiff was coached [2] regarding her work performance; (2) she disagreed with the coaching, but never read the coaching form; (3) plaintiff was told that if she did not sign the form, she could be terminated; (4) she refused to sign the coaching form; (5) plaintiff said she would rather quit than be fired; (6) plaintiff said she quit and gave a two week notice; (7) the supervisors refused to accept a two week notice; and then (8) plaintiff walked out of the room. Under these circumstances, plaintiff has not established that she was terminated. Plaintiff specifically testified that she quit her job *before* she was allegedly fired.[3] Plaintiff told two subsequent employers that she voluntarily left Wal–Mart. In addition, plaintiff's exit interview form, completed by her supervisors, states that plaintiff "walked off the job, refused to sign coaching and said she was quitting." Plaintiff has not established that she was discharged.

Our *de novo* review of the matter leads us to conclude, as did the district court, that Scott did not make a sufficient showing that she was "fired" by Wal–Mart. Such disposes of the two issues raised on appeal, both of which, as indicated at the outset, were based on the assumption that Scott had been fired by Wal–Mart.

Judgment affirmed.

2. Coaching is the term used by defendant to describe a disciplinary session where the supervisor and employee discuss the employee's deficiencies and need for improvement.

3. The following excerpt from plaintiff's deposition clearly shows that plaintiff quit before she was allegedly fired:

Q: No ... what was it Donna said to you that caused you to say, I would rather give two weeks written notice?

A. I don't remember. I don't remember.

Q: Prior to you saying I want to give two weeks written notice, did Donna tell you you were fired?

A. No.

Q: So your statement, I want to give two weeks written notice, occurred before Donna said you were fired?

A: Yes.

(Scott Dep. at 151).